```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
              EASTERN DIVISION


ROBERT JOHNSON,                   )
                                  )
         Plaintiff,               )
                                  )
    v.                            )   No. 07 C 4911
                                  )
COOK INCORPORATED,                )
                                  )
         Defendant.               )
```

### MEMORANDUM OPINION AND ORDER

In July of 2005, plaintiff Robert Johnson applied for a sales training program with defendant Cook Incorporated ("Cook"), a medical device company. Plaintiff's application for that position was rejected upon initial review of his resume and cover letter. Subsequent to his rejection, plaintiff brought this action against defendant for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*.[1] Defendant now moves for summary judgment. I grant defendant's motion for the following reasons.

I.

Summary judgment is proper when the pleadings and discovery, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *see also*

---

[1] Plaintiff stipulated to dismissal of his claim for disparate impact under the ADEA on September 15, 2008. The only remaining claim is one for disparate treatment.

*Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640 (7th Cir. 2008). All affidavits, opposing or supporting summary judgment, must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. FED. R. CIV. P. 56(e).

I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact remaining for trial. *Id.*

II.

Plaintiff applied for an entry-level sales position with defendant's START[2] program after seeing a classified advertisement for the position in the Chicago Tribune. (Cook 56.1 ¶ 3, 18, 31.) Cook hired different "teams" for its START program, and was hiring

---

[2] START stands for Strategic Target and Assist Recruit Team. (Cook 56.1 ¶ 19.) The START program is a six to eight week training program for individuals with little or no medical device or general sales experience. (*Id.*) After completion of the program, the new sales representatives assist more experienced sales representatives, temporarily fill in for sales representatives on leave, and assume open territories on a temporary or full-time basis. (*Id.*)

2

for START Team 2 at the time plaintiff applied. (Cook 56.1 ¶ 26.) The classified advertisement read as follows:

> MEDICAL DEVICE SALES REPRESENTATIVE – Looking for adventure and a challenging environment? Leading medical device manufacturer is seeking individuals who have recently or are about to graduate from college. If you have ever thought about breaking into the medical device sales field this is your opportunity. Candidates must have a degree in biology or business. Must be willing to relocate and travel at a moments notice. Full benefits package, competitive salary, travel expenses paid. Interested applicants submit resume, cover letter, and salary expectations to jobs@cook-inc.com. Resumes without salary expectations will not be considered. Please use 'Smart Program'[3] as the subject line.

(Pl.'s 56.1 ¶ 3.) In response to this advertisement, plaintiff submitted a cover letter and resume to Cook, which included a salary expectation of somewhere in the mid- to upper-$20,000 range. (Cook 56.1 ¶¶ 23-24.) The application identified plaintiff as someone with extensive sales experience, noting "about ten years of experience in sales, marketing, and teaching" in his cover letter and twenty years of experience in sales, among other things, in his resume. (*Id.*) Additionally, the job history portion of plaintiff's resume included descriptions of fifteen different jobs held in various fields for various entities, many for short periods of time. (*Id.* ¶ 25, 42.)

---

[3] The START program was formerly known as the SMART program. (Pl.'s 56.1 ¶ 2.)

Cook's human resources personnel initially screened applicants for the START program based on their cover letters and resumes, availability, qualifications, and willingness to relocate. (*Id.* ¶ 21.) Candidates who made it through the initial screening were further evaluated by a phone interview, after which certain applicants were invited to the company for a formal interview. (*Id.*) Positions with START Team 2 were offered to those candidates who passed the formal interview. Cook did not ask for the ages of the candidates until after they were offered positions. (*Id.* ¶ 22.) Since plaintiff did not make it past the first phase of review, defendant did not know plaintiff's actual age at the time of rejection, although it necessarily knew he was over forty.[4] (*Id.* ¶ 38.) Of the over 140 sales representatives hired by Cook from May 2004 through May 2006, approximately 18% were at least 40 years old at the time they were hired.[5] (Cook 56.1 ¶ 6.)

David St. John works for Cook as a human resources generalist and has held that position for the last ten years. (Pl.'s 56.1 ¶

---

[4] Although his age was not noted in the application, plaintiff's resume stated that he received an associate's degree in 1973 and bachelor's degree in 1978, indicating he was over forty years old when the application was submitted. (Pl.'s 56.1 ¶ 11.)

[5] Plaintiff objects to this statistic in a motion to strike and in his response to defendant's Rule 56.1 Statement of Facts, arguing that the affidavit claiming this statistic does not include a proper foundation. Plaintiff's motion to strike on this issue is denied. The affidavit is founded on the personal knowledge of a ten year veteran of defendant's human resources department. Notably, it appears plaintiff's own exhibits support the affiant's statistic. *(See* Pl.'s 56.1, Ex. A5.)

4

1.)  The majority of his time is spent reviewing applications for various positions at Cook, including positions for the START program.  (Pl.'s 56.1, Ex. A, p. 6-7.)  Mr. St. John does not specifically recall reviewing plaintiff's resume or cover letter at the time it was submitted, nor does he recall sending plaintiff's rejection letter.  (Pl.'s 56.1 ¶ 8.)  However, because the rejection letter closes with his signature, Mr. St. John believes he personally reviewed and rejected plaintiff's application. (*Id.*)  Based on Cook's business practices and his personal experience with reviewing applications for the START program, Mr. St. John believes he rejected plaintiff's application because 1) his resume and cover letter emphasized significant sales experience, which Cook did not want for START program candidates, 2) for someone with sales experience, his low salary expectations indicated that he was unfamiliar with the medical devices sales market and that he was not highly motivated, and 3) his resume indicated that plaintiff was a job-hopper and therefore undesirable.  (Cook 56.1 ¶¶ 27-28.)

Plaintiff filed charges of age discrimination with the EEOC.  The EEOC investigated the charges, found reasonable cause to believe a violation of the ADEA occurred and issued plaintiff a

right to sue letter.[6]  Subsequently, plaintiff filed the present action.

### III.

The ADEA prohibits an employer from failing to hire an employee on the basis of his age.  29 U.S.C. § 623(a)(1).  To succeed on a disparate treatment theory, an ADEA plaintiff must show that his age motivated the employer's decision not to hire. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).  In other words, age must have played a role in the decision-making process and had a determinative influence on the outcome.  *Id.*  Plaintiff can establish discrimination by providing either direct or indirect evidence.  *Id.*.  Here, plaintiff concedes he has no direct evidence of age discrimination.  (Pl.'s Resp. p. 4.)

The indirect method of proving discrimination first requires plaintiff to establish a *prima facie* case of discrimination, namely, that (1) he was a member of the protected age group (forty or older); (2) he applied for and was qualified for the position he sought; (3) he did not receive the position; and (4) those hired were substantially younger and were similarly situated individuals.

---

[6] Defendant filed a motion to strike plaintiff's statement of facts, exhibits, and argument related to the investigation and conclusions of the EEOC because the underlying documents were not properly authenticated, among other things. (*See* Def.'s Mot. to Strike ¶ 1.)  Although the EEOC documents are not properly authenticated, defendant does not suggest the documents do not accurately state the EEOC findings.  Defendant's motion is denied with respect to the EEOC finding on disparate treatment, but granted with respect to disparate impact since that claim has been voluntarily dismissed from this case.

*Zaccagnini v. Charles Levy Circulating Co.,* 338 F.3d 672, 675 (7th Cir. 2003). If plaintiff presents a *prima facie* case of discrimination, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for rejecting him. *Id.* Once the defendant does so, the inference of discrimination disappears and to survive summary judgment, plaintiff must demonstrate that defendant's reason was merely a pretext for the alleged discrimination. *Id.*

IV.

It is undisputed that Johnson was 1) over 40 years old at the time he applied for the START program, 2) at least minimally qualified[7] for the position sought and 3) not hired. With respect to the fourth element of his *prima facie* case, plaintiff argues that he and "all of the hired applicants for SMART Team 2 were applying for the same position, during the same hiring cycle, they all initiated contact with defendant by submitting resumes, according to those resumes none of them had any prior employment relationship with defendant, and all the resumes were screened using the same process." (Pl.'s Resp. p.9.) However, merely applying for the same position and undergoing the same review process is not enough to show plaintiff and the new hires were similarly situated. *See, e.g., White v. Columbus Metro. Housing*

---

[7] In its summary judgment brief, defendant concedes that plaintiff was "minimally qualified on paper." (Cook's Mot. Summ. J. pp.9-10.)

*Auth.*, 429 F.3d 232, 241 (6th Cir. 2005). Rather, the appropriate analysis focuses on the particular qualifications material to the open position and whether plaintiff and the new hires were similarly situated in those respects. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir.2006); *Balderston v. Fairbanks Morse Engine Div.*, 328 F.3d 309, 322 (7th Cir.2003). Plaintiff has not met his burden to show substantial similarity and therefore cannot make his *prima facie* case. The only somewhat substantive argument provided by plaintiff on substantial similarly is that, like him, the new hires all "had college degrees of some kind and they all had some work experience." (Pl.'s Resp. p.9.) While this shows plaintiff and the new hires were minimally qualified, it is insufficient to show substantial similarity with respect to characteristics and attributes material to the START program.

Even if plaintiff had made his *prima facie* case, he has not presented evidence that the three non-discriminatory reasons given for rejecting his application were pretextual. Defendant contends plaintiff was rejected because 1) he had too much sales experience for the START training program, 2) his low salary expectations indicated that he was not highly motivated and that he had a poor understanding of the sales market despite his proffered experience, and 3) he had a history of "job-hopping," which made him an undesirable candidate. (Cook Summ. J. Mem. pp. 11-14.) These non-

discriminatory reasons are supported in part by the deposition testimony and affidavit of Mr. St. John. (Cook 56.1 ¶ 27-28.)

In response, plaintiff contends that because Mr. St. John does not specifically recall reviewing and rejecting plaintiff's application, he cannot testify to the non-discriminatory reasons for which plaintiff was allegedly rejected.[8] (Pl.'s Resp. p. 9.) In support of his arguments, plaintiff cites one case, *Salamanca v. Robert Half Corp.*, No. 02 C 5033, 2003 WL 1825561 (N.D.Ill. 2003). In *Salamanca*, the plaintiff alleged she was fired because of her race and national origin, among other things. *Id.* at *1. The defendant employer maintained plaintiff was fired for poor performance, but the person who actually fired her testified that she did so on instructions from her supervisor without knowing the reasons for his decision. *Id.* at *4. The supervisor, in turn, testified that he did not remember even being involved in the plaintiff's termination. *Id.* Thus, the employer had no evidence at all of a nondiscriminatory reason for the termination.

*Salamanca* is not instructive here because the firing in that case was unique to the plaintiff and the only person who knew why she was fired had no recollection of even being involved. *Id.* at

---

[8] Going further, plaintiff suggests that Mr. St. John made up the non-discriminatory reasons after the EEOC proceeding was initiated. However, a fair reading of Mr. St. John's deposition shows that while he did not remember reviewing or rejecting plaintiff's application at the time it was submitted, once he learned of the EEOC proceeding he noted the reasons why he would have rejected plaintiff's application based on his habit and defendant's hiring practices. (Pl.'s 56.1, Ex. A, p. 27-29.)

9

*4. Here, plaintiff's rejection was one of numerous rejections for the same entry-level position, performed by the same person, Mr. St. John. (Pl.'s 56.1, Ex. A, p. 44.) The parties agree that Mr. St. John personally reviewed and rejected plaintiff's application. (Pl.'s 56.1 ¶ 8.) Accordingly, his testimony is relevant and admissible to show his rejection of plaintiff's application was in conformity with his usual habit and Cook's hiring practices in reviewing thousands of applications for the START program. FED. R. EVID. 406; (Pl.'s 56.1, Ex. A, p. 44.)

Plaintiff also argues that the court should find that his associates degree and/or minor in biology made him a better candidate than certain new hires, who earned at least bachelor's degrees in science or business, but not in biology.[9] But, education, or lack thereof, was not one of the non-discriminatory reasons given by defendant as to why plaintiff was not hired. Therefore, plaintiff's pretext argument on this issue is not relevant. The argument is also not persuasive. The new hires all have solid education credentials in business and science, appropriate for a medical device sales training program. *Millbrook v. IBP, Inc.,* 280 F.3d 1169 (7th Cir.2002) (finding evidence of applicants' competing qualifications does not constitute evidence of pretext unless differences are so favorable to plaintiff that

---

[9] For example, Mr. Young, one of the new hires, earned a dual degree in pre-medicine and chemistry, with a minor in business. (Pl.'s 56.1, Ex.J, p. 10.)

there can be no dispute among reasonable persons of impartial judgment that plaintiff was clearly better qualified for the position") (citation omitted).

Next, plaintiff argues that his employment history does not indicate he was a job-hopper. However, the issue here is not whether defendant was correct, but whether defendant was lying. Defendant was entitled to act on the belief that plaintiff was a job-hopper and reject him, so long as this belief was genuine. *Healy v. City of Chicago*, 450 F.3d 732, 742 n. 12 (7th Cir.2006). Plaintiff contends that because he was older than the new hires it stands to reason that he would have a longer work history, and the fact that he held two jobs for six years proves he was not a job-hopper. But, fifteen different jobs in various fields over a twenty year period is a lot and plaintiff's opinion as to how his resume should be interpreted is not sufficient evidence to show pretext. With no explanation in his cover letter as to why plaintiff switched jobs so often and in such varied fields, defendant could easily have determined plaintiff was not able or willing to hold down a job. *See Flores v. Preferred Tech. Group*, 182 F.3d 512, 516 (7th Cir.1999) (explaining determination of honest belief is related to reasonableness – the more objectively reasonable the belief, the more likely belief was honestly held). Accordingly, plaintiff has not met his burden in showing defendant's proffered reason was pretext.

Plaintiff also argues defendant's contentions that he was too experienced[10] for a beginning sales position and that his salary expectations were out of line with market demands were pretext. Again, plaintiff does not supply any credible evidence showing these beliefs were not true.[11] Defendant offered the START program for those new to sales. That it chose not to hire experienced sales people through that specific program is defendant's prerogative.[12] *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2001)(noting the court is not a personnel department; acknowledging employer's unfettered discretion to choose among qualified candidates);*see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (stating "[w]hen the employer's decision is wholly

---

[10] Plaintiff argues that defendant told the EEOC he was "overqualified" for the position and cannot now say that he was not qualified because of his experience. The record is clear that defendant considered plaintiff's extensive sales experience inappropriate for its entry level training program. That defendant called him "overqualified" because of his experience or "not qualified" for an entry-level program because of his experience is a distinction without a difference.

[11] Plaintiff references the EEOC finding of disparate treatment as evidence that defendant's non-discriminatory reasons for rejecting plaintiff were pretext. While the EEOC finding is notable, it is not determinative. *Tuohey v. Chicago Park Dist.*, 148 F.3d 735, 739-740 (7th Cir. 1998).

[12] Plaintiff also argues this reason is pretext because some of the new hires had previous sales experience and were still hired. Upon review of the new hires' resumes, this argument is not well founded. Other than retail sales jobs held while attending school (*e.g.*, Macy's, Office Depot), the only sales experience described were for periods of less than a year – nothing comparable to plaintiff's alleged ten years of experience. (*See* Pl.'s 56.1, Ex. J.)

motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears...even if the motivating factor is correlated with age.") As for salary expectations, the only fact plaintiff offers to show pretext is that the new hires did not give any salary expectations. This fact alone does not mean plaintiff's low salary demand was not suspect in and of itself.

IV.

For the foregoing reasons, defendant's motion for summary judgment is granted. To the extent the parties' motions to strike were addressed in my opinion they are granted in part and denied in part as discussed above. All remaining motions to strike are denied as moot. This case is terminated.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Date: November 25, 2008